## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

RICHMOND NATIONAL INSURANCE COMPANY,

                                       CASE NO: 0:25-cv-61871

        Plaintiff,

v.

COMMODORE CONDOMINIUM APARTMENTS, INC., FIRST SERVICE RESIDENTIAL, INC., ANITA GRIZAFFI TRUST U/A/D 11/21/2002, ANITA GRIZAFFI, DAWN WALSH, LORI HAGUE, GREGORY PALIVOS, individually and as personal representative of THOMAS PALIVOS and PETROS PALIVOS, AMANDA PALIVOS, and GENOA KRISCO as personal representative of LEONARDO KRISCO,

        Defendants.

_____/

## COMPLAINT

RICHMOND NATIONAL INSURANCE COMPANY ("RNIC") files suit against COMMODORE APARTMENTS, INC. ("Commodore"), FIRST SERVICE RESIDENTIAL, INC. ("FSR"), ANITA GRIZAFFI TRUST U/A/D 11/21/2002 ("Trust"), ANITA GRIZZAFI, DAWN WALSH, LORI HAGUE, GREGORY PALIVOS, individually and as personal representative of THOMAS PALIVOS and PETROS PALIVOS, AMANDA PALIVOS, and GENOA KRISCO as personal representative of LEONARDO KRISCO, and alleges:

## NATURE OF THE ACTION

1. This is an action for a declaration under 28 U.S.C. §§ 2201 and 2202 that RNIC owes no coverage under its insurance policies for the claims asserted against Commodore and FSR

in an underlying action styled *Anita Grizaffi Trust U/A/D 11/12/2001 through Anita Grizaffi, Trustee; Anita Grizaffi, individually, Dawn Walsh, Lorig Hague, individually, Gregory Palivos, individually, and as personal representatives on behalf of Thomas Palivos and Petros Palivos; Amanda Palivos, individually, and Genoa Krisco, as personal representative of Leonardo Krisco*, in the Circuit Court of Broward County, Florida, Case No. CACE-23-016347 ("Underlying Action").

2.      More specifically, RNIC seeks a declaration that it has no duty to defend or indemnify Commodore or FSR in the Underlying Action under the terms of the RNIC commercial general liability policies issued to "Commodore Condominium Apartments, Inc."

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff and the defendants, and the amount in controversy exceeds $75,000, exclusive of attorney's fees and costs.

4.      Venue is proper in this district because the Underlying Action is pending in this district and "a substantial part of the events . . . giving rise to the claim occurred in this district." *See* 28 U.S.C. § 1391(b)(2).

5.      All conditions precedent occurred, were performed, or were waived.

## THE PARTIES

6.      RNIC is a New Hampshire corporation with its principal place of business in Virginia.

7.      The Trust is formed under the laws of the State of Illinois. Further, upon information and belief, its trustee, Anita Grizaffi is a citizen of Illinois.

8.      Anita Grizzafi, upon information and belief, is a citizen of Illinois.

9.      Dawn Walsh, upon information and belief, is a citizen of Illinois.

10.     Lori Hague, upon information and belief, is a citizen of Illinois.

11.     Gregory Palivos, upon information and belief, is a citizen of Illinois.

12.     Thomas Palivos, upon information and belief, is a minor child and citizen of Illinois.

13.     Petros Palivos, upon information and belief, is a minor child and citizen of Illinois.

14.     Amanda Palivos, upon information and belief, is a citizen of Illinois.

15.     Genoa Krisco, upon information and belief, is a citizen of Florida.

16.     Leonardo Krisco, upon information and belief, is a minor child and citizen of Florida.

## THE UNDERLYING ACTION

17.     On August 1, 2023, the Trust, Anita Grizzafi, Dawn Walsh, Lori Hague, Gregory Palivos, individually and as personal representative of Thomas Palivos and Petros Palivos, Amanda Palivos, and Genoa Krisco as personal representative of Leonardo Krisco ("Underlying Plaintiffs") filed the Underlying Action against Commodore and FSR.

18.     According to the operative second amended complaint ("Underlying Complaint") the Trust owns a condominium unit ("Unit") at a condominium building operated by Commodore and managed by FSR. *See* Underlying Complaint, at ¶¶ 1, 3, 4 attached as Exhibit "A."

19.     RNIC has been defending Commodore and FSR in the Underlying Action under a reservation of rights. *See* Reservation of Rights Correspondence to Commodore, attached as Exhibit "B"; Reservation of Rights Correspondence to FSR, attached as Exhibit "C."

20.     Within its reservation of rights letters to Commodore and FSR, RNIC specifically reserved the right to "seek reimbursement of its defense fees and cost in the event of a determination of no coverage." *See* Exhibit "B," at p. 10; Exhibit "C," at p. 10.

I.      **THE 2022 AND 2023 CONDOMINIUM LEAKS**

21.     Beginning in 2022, the Underlying Complaint alleges that water entered the Unit "through the roof and/or exterior walls . . . and . . . into the ceiling of the front door area, the dining room and the master bathroom" of the Unit. *See* Exhibit "A," at ¶12.

22.     Thereafter, in January and February 2023, the Underlying Complaint alleges that "new flooding" "occurred from the roof and/or external walls into the ceiling of the kitchen and family room" at the Unit. *Id*.

23.     Commodore and FSR were timely placed on notice of the 2022 leak as well as the January and February 2023 leaks. *Id*.

24.     Despite having notice of the leaks and knowing of the "sources and occurrence of water intrusion and damage over years of time," Commodore and FSR allegedly "did nothing to competently end the moisture intrusion, repair its damage, remediate it, and competently and timely ensure that the premises were safe for occupancy." *Id*. at ¶14.

II.     **THE MOLD INFESTATION AND CONTAMINATION**

25.     Due to Commodore's and FSR's alleged failure to "maintain, repair and remediate" the condominium building, the Underlying Plaintiffs were "subjected to a water damaged, mold-infested and mold chemistry contaminated condominium, within their unit and in the common areas of the building which surround their unit, and which continue to contaminate their unit." *Id*. at ¶¶ 11, 13.

26.     The failure to make these repairs allegedly caused the condominium building to continue to deteriorate and mold to permeate in the Unit and common areas appurtenant to it. *Id.* at ¶18.

27.     As of the date of its filing, the Underlying Complaint alleges that the Unit and common areas "contain elevated and abnormally high levels of toxic mold and building deterioration." *Id.* at ¶22.

28.     As a result of the mold and water damage, the Underlying Complaint alleges that the Underlying Plaintiffs developed illness beginning in November of 2022. *Id.* at ¶13.

29.     Additionally, the moisture, "microbes/microbial chemistries" and "air contamination" allegedly contaminated the Unit, the Underlying Plaintiffs' personal property, and impacted the "safe and quiet use of the [U]nit." *Id.* at ¶14.

30.     The Underlying Complaint asserts the following claims against Commodore and FSR relating to the proliferation of mold and microbial growth at the Unit and Condominium building:

A.      **Count I (Breach of Contract against Commodore)**: Alleging that "[Commodore] materially breached the contract . . . and has caused damages thereby . . . from water and microbial damage."

B.      **Count II (Negligence against Commodore)**: Alleging that Commodore continuously breached its duties "when it permitted conditions that allowed unrepaired building structural damage, water and mold to permeate through the walls, air and ceilings into the [Unit] … and through common areas." As a result, "[Underlying] Plaintiffs have each been harmfully exposed to abnormal levels and types of mold spores and excreted microbial chemistries" and "have been damaged in an amount to be determined at trial, which amount includes … personal injuries damages … [due to the] [s]ubstantial exposure and harm … from mold and fungi."

C.      **Count III (Gross Negligence against Commodore)**: Alleging that Commodore breached certain duties by "willfully and wantonly" delaying repairs "when it was apparent that defects, damage, and non-functionality of systems was likely causing elevated indoor moisture and microbial

growth." The Underlying Plaintiffs were "harmfully contacted and exposed to the microbes and microbial chemistries … when they inhaled the contaminated air and when they touched the contaminated surfaces." As a result, "the [Underlying] Plaintiffs were caused to suffer water intrusion and damage, microbial and microbial chemistry contamination and exposure."

    **D.**    **Count IV (Negligence against FSR)**: Alleging that FSR "breached its duties of due care… by causing and contributing to the growth of toxigenic and allergenic microbes and their chemistries in the [Unit] and its attendant common areas." According to the count, FSR's improper maintenance "resulted in chronic water and moisture intrusion and damage into the ceiling, walls, interstitial cavities and/or drywall baseboard and HVAC system of the [Unit] and common areas which caused microbiological contamination in the form of the growth of toxic and allergenic fungi." Due to this "conduct and contamination, the Plaintiffs' condominium home and its proximate common areas became defective and otherwise not reasonably fit for continued habitation or for its intended purpose." In addition, the count alleges that "the [Underlying] Plaintiffs have been damaged [by] … harmful exposure to the microbes and their chemistries … [as well as] were harmfully exposed to the contaminants caused by [FSR] to proliferate within the subject premises when they inhaled the contaminated air and when they touched the contaminated surfaces … from mold and fungi."

*See* Exhibit "A," at ¶¶ 36, 42, 44, 47, 52, 53, 56, 57, 58 60.

    31.    Furthermore, the Underlying Complaint includes an entire section dedicated to "Mold and its Environmental Consequences," wherein it explains what mold is, how it grows, its toxicity, and its impact on humans. *Id.* at ¶¶ 24-32.

## THE RNIC POLICIES

    32.    RNIC issued successive commercial general liability policies to "Commodore Condominium Apartments, Inc." as the first named insured, bearing policy numbers RN-7-032466 ("22-23 Policy") and RN-7-0500519 ("23-24 Policy," collectively "Policies"). *See* 22-23 Policy, attached as Exhibit "D"; 23-24 Policy, attached as Exhibit "E."

    33.    The Policies have effective dates of coverage of June 1, 2022 to June 1, 2023 and June 1, 2023 to June 1, 2024, respectively. *See id.*

34.     Both Polices have limits of $1 million per occurrence and $2 million aggregate, subject to a $2,500 per occurrence deductible. *See id.*

## I.      THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM

35.     The Policies' principal coverage form, the Commercial General Liability Coverage Form (CG 00 01 04 13), provides as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**

**1.  Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    **b.**  This insurance applies to "bodily injury" and "property damage" only if: . . .

        **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**  The "bodily injury" or "property damage" occurs during the policy period . . .

        **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. . . .

**SECTION V – DEFINITIONS...**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. …

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. …

*See* Exhibit "D," at p. 8, 20, 22, 23; Exhibit "E," at p. 11, 23, 25, 26.

## II.   THE MOLD EXCLUSION

36.    The Policies contain a "Exclusion – Mold, Fungus, Bacteria, Virus and Organic

Pathogens" endorsement ("Mold Exclusion") (RNIL 1001 1021), which provides:

### EXCLUSION – MOLD, FUNGUS, BACTERIA, VIRUS AND ORGANIC PATHOGENS . . .

This insurance does not apply to any claim, suit, loss, injury, damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising from, in any way related to, or in any way involving the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape, contamination, growth, inhalation, ingestion, absorption of or exposure to:

    a.  any organic irritant or contaminant, including but not limited to mold, fungus, lichen, virus, bacteria, or other living or dead or growing organism that has any toxic, hazardous, noxious, pathogenic, irrigating or allergen qualities, including but not limited to all of their byproducts such as mycotoxins, mildew, or biogenic aerosols;

b. any toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air regardless of cause;

c. any insured's use, sale, installation or removal of any substance, material, or other product that is either alleged or deemed to be hazardous, toxic, irritating, pathogenic or noxious in any way, or contributes in any way to an allergic reaction; or

d. any toxic or hazardous properties of minerals, animal or avian wastes or feces or other substances.

This exclusion includes but is not limited to:

a. any injury or damage for the diminution in value, loss of market value, loss of use, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense;

b. any fines and penalties arising out of any governmental order, direction or request, or by any private party or citizen regarding testing, monitoring, clean up, removal, containment, treatment, detoxification or neutralization.

This exclusion applies regardless of whether or not such actual, alleged or threatened existence, discharge, dispersal, seepage migration, release, escape, contamination, growth, inhalation, ingestion, or absorption of or exposure to was sudden, accidental or gradual in nature, and regardless of whether intentionally caused or not.

*See* Exhibit "B," at p. 33; Exhibit "C," at p. 34.

## III.   THE POLLUTION EXCLUSION

37.     The Policies also contain an "Exclusion - Absolute Pollution, Silica, Asbestos, Lead and Related Liability - Hostile Fire and HVAC Exceptions" endorsement ("Pollution Exclusion") (RNIL 1018 1021), which provides:

**EXCLUSION - ABSOLUTE POLLUTION, SILICA, ASBESTOS, LEAD AND RELATED LIABILITY - HOSTILE FIRE AND HVAC EXCEPTIONS . . .**

I.   This insurance does not apply to any claim, suit, loss, injury, damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising from, in any way related to, or in any way involving the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape, contamination, growth, inhalation, ingestion, or absorption of or exposure to "pollutants", "silica", asbestos, or lead at any time, including but not limited to:

a. "Bodily injury", "personal and advertising injury", "property damage" or any other injury or damage for the diminution in value, loss of market value, loss of use, or for taking, use or acquisition or interference with the rights

of others in or on property or air space, or any other type injury or expense; or

b. Loss, cost, expense, fines, or penalties arising out of any (i) request, demand, order, statutory or regulatory requirement, governmental authority or directive that of any private party or citizen action that any insured, or others, test for, monitor, clean up, remove, abate, remediate, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants", environmental impairments, contaminants, "silica", asbestos, or lead; (ii) any litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of "pollutants", environmental impairments, contaminants, "silica", asbestos, or lead into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when; or (iii) any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants", environmental impairments, contaminants, "silica", asbestos, or lead;

c. "Pollutants", pollution, environmental impairment, contamination, "silica", asbestos, lead or any other expense or obligation to share damages with or repay anyone else who must pay damages arising out of or in any way involving "pollutants", "silica", asbestos, or lead. All liability and expenses arising out of or related to any form of "pollutant", "silica", asbestos, or lead, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any insured or any person or entity, are totally excluded from this policy….

III. For purposes of this endorsement, the following definitions are added:

a. "Pollutants" means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, lead, fumes, fibers, radiation, acid, alkalis, radon, combustion byproducts, petroleums, chemicals, toxins or "waste" from any source whatsoever. Examples of pollutants include, but are not limited to, diesel, kerosene, and other fuel oils, carbon monoxide, and other exhaust gases, mineral spirits, and other solvents, tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides, and all substances specifically listed, identified, or described by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions), the Agency for Toxic Substances And Disease Registry ToxFAQs, and the U.S. Environmental Protection Agency EMCI Chemical References Complete Index…

This exclusion applies regardless of whether the "pollutant", "silica", asbestos, or lead has a function in, or is used by you in your business, operations, premises, site or location.

If this policy already includes a pollution exclusion or definition of "pollutant", they are fully deleted and replaced by this endorsement.

*See* Exhibit "B," at pp. 44-45; Exhibit "C," at pp. 43-44.

## IV. THE INFECTIOUS AGENTS EXCLUSION

38.    The Policies also contain an "Exclusion - Virus, Disease, Infectious Agents"

endorsement ("Infectious Agents Exclusion") (RNIL 1002 1021), which provides:

**EXCLUSION - VIRUS, DISEASE, INFECTIOUS AGENTS . . .**

This insurance does not apply to any claim, suit, loss, injury, damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising from, in any way related to, or in any way involving any actual or alleged:

   a.  growth, proliferation, transmission, spread, or presence of any virus, bacterium, fungi, pathogen, parasite, helminth, prion, protozoa, or any other infectious agent, including but not limited to human immunodeficiency virus (HIV), acquired immune deficiency syndrome (AIDS), Legionnaires' disease, SARS-CoV-2, influenza, methicillin resistant staphylococcus aureus (MRSA), tuberculosis (TB), severe acute respiratory syndrome (SARS), and middle east respiratory syndrome (MERS).

This exclusion applies regardless of the theory of liability against the insured, including but not limited to: supervision, placement, hiring, employment, training, or monitoring of, testing for, failure to prevent the spread of, failure to report, failure to warn, lack of or inadequacy of personal protective equipment (PPE), wrongful termination, wrongful demotion, or wrongful discrimination.

This exclusion applies whether or not the cause or event occurs suddenly or gradually, is isolated or widespread, or arises from natural or external forces.

This exclusion applies regardless of whether any other actual or alleged cause contributed concurrently, initially, efficiently, proximately, or in any other sequence to such claim, suit, loss, injury, damage, cost or expense. This exclusion applies regardless of intent, and regardless of any other provision in the policy to the contrary.

*See* Exhibit "B," at p. 34; Exhibit "C," at p. 35.

## V.    <u>THE PRIOR INJURY OR DAMAGE EXCLUSION</u>

39.    The Policies also contain an "Additional Policy Exclusions" endorsement ("Prior

Injury or Damage Exclusion") (RNGL 1010 0222), which provides:

### ADDITIONAL POLICY EXCLUSIONS . . .

The following exclusions are added to this Policy . . .

**PRIOR INJURY OR DAMAGE EXCLUSION**

This insurance does not apply to any claim or "suit" in any way based upon, directly or indirectly arising from, in any way related to, or in any way involving "bodily injury," "property damage" or "personal and advertising injury" which begins to take place or takes place before the inception date of this policy, or before the retroactive date of this policy if applicable, regardless of whether or not such "bodily injury", "property damage" or "personal and advertising injury" is known to any insured. This exclusion shall apply even though the nature and extent of such damage or injury may change and even though the damage or injury may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such "bodily injury" or "property damage", or the offense causing such "personal and advertising injury" may be or may involve a continuous or repeated exposure to substantially the same general harm or condition.

*See* Exhibit "B," at p. 59; Exhibit "C," at p. 55.

## VI.    <u>THE WATER DAMAGE EXCLUSION IN THE 23-24 POLICY</u>

40.    The 23-24 Policy also contains an "Exclusion - Property Damage Involving Water"

endorsement ("Water Damage Exclusion") (RNGL 1080 1021), which provides:

### EXCLUSION - PROPERTY DAMAGE INVOLVING WATER . . .

**Water Property Damage**

This insurance does not apply to any claim, "suit", loss, cost or expense as a result of "property damage", whether actual or alleged, that is in any way based upon, directly or indirectly arising out of, in any way related to, or in any way involving:

1. Any discharge or leakage, backup or overflow from sewers, water systems, plumbing, appliances, automatic sprinkler systems, or from any other source; or

2. Any rain, snow or water admitted into building interiors through defective or damaged roofs, leaders, sprouting, doors, windows, skylights, transoms, vents, gutters, drains, walls, or from any other means; or

     3.   The failure to supply water or the contamination of water and any resulting consequential loss or damage.

This endorsement applies regardless of fault or intent, and regardless of the particular cause of action against the "insured." This endorsement applies to any claim or "suit" where any actual or alleged injury or damage arises out of a chain of events that includes the events described in Paragraphs 1. through 3, regardless of whether any other actual or alleged cause contributed concurrently, initially, efficiently, proximately, or in any other sequence to such "property damage."

*See* Exhibit "C," at p. 63.

### COUNT I – NO COVERAGE UNDER
### THE MOLD EXCLUSION

41.    RNIC incorporates paragraphs 1 through 40.

42.    The Underlying Action is based on, arises from, is related to, or involves: (a) the contamination, growth, inhalation, ingestion, or exposure to organic irritants or contaminants, including mold, fungus, bacteria, or other living or dead organism that has any toxic, hazardous, noxious, pathogenic, irrigating or allergen qualities, including all of their byproducts such as mycotoxins, mildew, or biogenic aerosols; or (b) the toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air. *See e.g.*, Exhibit "A," at ¶¶ 11, 13, 14, 22; 36, 42, 44, 47, 52, 53, 56, 57, 58, 60.

43.    More specifically, the Underlying Complaint alleges that the Unit and the condominium building: (a) was infested with mold; (b) was contaminated with mold chemistries, "microbes/microbial chemistries," and "air contamination"; and (c) contained "elevated and abnormally high levels of toxic mold." *Id.* ¶¶ 36, 42, 44, 47, 52, 53, 56, 57, 58, 60.

44.    Moreover, the Underlying Complaint is replete with allegations of harmful exposure to, contact with, and inhalation of, mold, fungi, microbes, and "excreted microbial chemistries," as well as the presence of "microbial growth," "microbial damage," and "microbiological contamination." *Id.* ¶¶ 36, 42, 44, 47, 52, 53, 56, 57, 58, 60.

Page 13

45.     In fact, the Underlying Complaint includes an entire section dedicated to "Mold and its Environmental Consequences" as well as includes allegations explaining what mold is, how it grows, its toxicity, and its impact on humans. *Id.* at ¶¶ 24-32.

46.     The Underlying Action is therefore barred by the Mold Exclusion.

47.     Accordingly, RNIC has no duty to defend or indemnify Commodore or FSR in the Underlying Action.

**COUNT II – NO COVERAGE UNDER**
**THE POLLUTION EXCLUSION**

48.     RNIC incorporates paragraphs 1 through 40.

49.     The Underlying Action is based on, arises from, is related to, or involves the alleged migration, contamination, growth, inhalation, ingestion of, or exposure to a "pollutant."

50.     The Underlying Action asserts claims for loss, injury, and damage based on, arising from, related to, or involving the alleged migration, contamination, growth, inhalation, ingestion of, or exposure to a "pollutant."

51.     More specifically, the Underlying Complaint includes numerous allegations of "mold chemistry" contamination, "moisture and microbes/microbial chemistr[y]" contamination, and "air contamination," as well as the growth or inhalation of microbes, "microbial chemistry," invisible airborne mold particles, "toxigenic and allergenic microbes and their chemistries," "toxic and allergenic fungi," and mold at the Unit and the condominium building. *See, e.g., Id.* at ¶11, 12, 13, 14, 16, 17, 40, 44, 51, 52, 53, 56, 57, 58, 60.

52.     The Underlying Action is therefore barred by the Pollution Exclusion.

53.     Accordingly, RNIC has no duty to defend or indemnify Commodore or FSR in the Underlying Action.

## COUNT III – NO COVERAGE UNDER
## THE INFECTIOUS AGENTS EXCLUSION

54.     RNIC incorporates paragraphs 1 through 40.

55.     The Underlying Action is based on, arises from, is related to, or involves the alleged growth, proliferation, transmission, spread, or presence of bacterium, fungi, pathogens, or other infectious agents.

56.     The Underlying Action asserts claims for loss, injury, and damage based on, arising from, related to, or involving the alleged growth, proliferation, transmission, spread, or presence of bacterium, fungi, pathogens, or other infectious agents.

57.     More specifically, the Underlying Complaint is replete with allegations relating to the growth and proliferation of mold, "toxic and allergenic fungi," microbes, "dangerous microbes" microbial chemistry, and "toxigenic and allergenic microbes and their chemistries" *See, e.g.*, *Id.* at ¶11, 12, 14, 15, 17, 51, 52, 53, 56, 57, 60.

58.     The Underlying Action is therefore barred by the Infectious Agents Exclusion.

59.     Accordingly, RNIC has no duty to defend or indemnify Commodore or FSR in the Underlying Action.

## COUNT IV – NO COVERAGE UNDER
## THE PRIOR INJURY OR DAMAGE EXCLUSION
## (PROPERTY DAMAGE PRIOR TO 22-23 POLICY)

60.     RNIC incorporates paragraphs 1 through 40.

61.     The Underlying Complaint was filed in December 2023.

62.     The Underlying Complaint alleges that the water intrusion and damage occurred "over years of time." *Id.* at ¶114.

63.     The Underlying Complaint also alleges that the Unit "is and was, for years, infested with toxic mold and mold chemistries." *Id.* at ¶46.

64.   The 22-23 Policy incepted on June 1, 2022.

65.   The Underlying Action is based on, arises from, is related to, or involves "property damage" that began to take place before the inception date of the 22-23 policy.

66.   The Underlying Action is therefore barred by the Prior Injury or Damage Exclusion of the 22-23 Policy.

67.   Accordingly, RNIC has no duty to defend or indemnify Commodore or FSR in the Underlying Action under the 22-23 Policy.

### COUNT V – NO COVERAGE UNDER
### THE PRIOR INJURY OR DAMAGE EXCLUSION
### (PROPERTY DAMAGE PRIOR TO 23-24 POLICY)

68.   RNIC incorporates paragraphs 1 through 40.

69.   The Underlying Complaint was filed in December 2023.

70.   The Underlying Complaint alleges that the "water damage and intrusion which is the subject of this law suit relate to water entering into [the Unit] through the roof and/or exterior walls commencing in 2022 . . . ." *Id.* at ¶12.

71.   The Underlying Complaint also alleges additional damage that occurred in January and February 2023. *Id.*

72.   The Underlying Complaint further alleges that the water intrusion and damage occurred "over years of time" and that the Unit "is and was, for years, infested with toxic mold and mold chemistries." *Id.* at ¶ 14, 46.

73.   The 23-24 Policy incepted on June 1, 2023.

74.   The Underlying Action is based on, arises from, is related to, or involves "property damage" that began to take place before the inception date of the 23-24 policy.

75.    The Underlying Action is therefore barred by the Prior Injury or Damage Exclusion of the 23-24 Policy.

76.    Accordingly, RNIC has no duty to defend or indemnify Commodore or FSR in the Underlying Action under the 23-24 Policy.

## COUNT VI – NO COVERAGE UNDER
## THE PRIOR INJURY OR DAMAGE EXCLUSION
## (BODILY INJURY PRIOR TO 23-24 POLICY)

77.    RNIC incorporates paragraphs 1 through 40.

78.    The Underlying Complaint alleges that the Underlying Plaintiffs developed illness in November 2022. *Id.* at ¶12.

79.    The 23-24 Policy incepted on June 1, 2023.

80.    The Underlying Action is based on, arises from, is related to, or involves "bodily injury" that began to take place before the inception date of the 23-24 policy.

81.    The Underlying Action is therefore barred by the Prior Injury or Damage Exclusion of the 23-24 Policy.

82.    Accordingly, RNIC has no duty to defend or indemnify Commodore or FSR in the Underlying Action under the 23-24 Policy.

## COUNT VII – NO COVERAGE UNDER
## THE WATER DAMAGE EXCLUSION
## (23-24 POLICY)

83.    RNIC incorporates paragraphs 1 through 40.

84.    The Underlying Action is based upon, arises out of, is related to, or involves water admitted into building interiors through defective or damaged roofs, leaders, sprouting, doors, windows, skylights, transoms, vents, gutters, drains, walls, or from any other means.

85.     More specifically, the Underlying Complaint alleges that the "water damage and intrusion which is the subject of this law suit relate to water entering into … [the Unit] through the roof and/or exterior walls." *Id.* at ¶12.

86.     Further, the Underlying Complaint includes numerous allegations of water intrusion into the interior of the condominium building and the Unit. *See, e.g.*, *id.* at ¶21 ("Defendants . . . failed . . . to reasonably remedy the building damage, water intrusion and mold infestation . . . .").

87.     The Underlying Action is therefore barred by the Water Damage Exclusion of the 23-24 Policy.

88.     Accordingly, RNIC has no duty to defend or indemnify Commodore or FSR in the Underlying Action under the 23-24 Policy.

## COUNT VIII – NO COVERAGE UNDER THE 23-24 POLICY'S INSURING AGREEMENT

89.     RNIC incorporates paragraphs 1 through 40.

90.     The insuring agreement to the 23-24 Policy states, in part, that the policy "applies to 'bodily injury' and 'property damage' only if . . . [p]rior to the policy period, no insured . . . knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part."

91.     The Underlying Complaint alleges that Commodore and FSR knew that the "bodily injury" and "property damage" had been occurring prior to the inception of the 23-24 Policy. *See id.* at ¶12 ("Defendant sent several personnel to allegedly make repairs on multiple occasions in 2022.").

92.     More specifically, the Underlying Complaint alleges that Commodore and FSR: (a) attempted to make repairs on multiple occasions in 2022; (b) were given notice of the January and

February 2023 leaks; and (c) knew of the sources and occurrence of water intrusion and damage over years of time. *Id.* at ¶12.

93.     The damages sought in the Underlying Action are outside the insuring agreement of the 23-24 Policy.

94.     Accordingly, RNIC has no duty to defend or indemnify Commodore or FSR in the Underlying Action under the 23-24 Policy.

## COUNT IX – RECOUPMENT OF DEFENSE FEES

95.     RNIC incorporates paragraphs 1 through 40.

96.     RNIC has been defending Commodore and FSR under a reservation of rights.

97.     More specifically, RNIC reserved the right to "seek reimbursement of its defense fees and cost in the event of a determination of no coverage." *See* Exhibit "B," at p. 10; Exhibit "C," at p. 10.

98.     RNIC has incurred a significant amount of fees and costs in the defense of Commodore and FSR in the Underlying Action.

99.     Because there is no coverage under the Policies, RNIC is entitled to recover the fees and costs it incurred in the defense of Commodore and FSR in the Underlying Action.

## REQUESTED RELIEF

**WHEREFORE**, RNIC respectfully requests that this Court:

A.     Take jurisdiction and adjudicate the rights of the parties under the RNIC Policies;

B.     Declare that RNIC has no obligation to defend or indemnify Commodore in the Underlying Action under the terms of the 22-23 Policy;

C.     Declare that RNIC has no obligation to defend or indemnify FSR in the Underlying Action under the terms of the 22-23 Policy;

D.     Declare that RNIC has no obligation to defend or indemnify Commodore in the Underlying Action under the terms of the 23-24 Policy;

E.      Declare that RNIC has no obligation to defend or indemnify FSR in the Underlying Action under the terms of the 23-24 Policy;

F.      Declare that RNIC is entitled to recover the fees and costs it incurred in defense of Commodore in the Underlying Action;

G.      Declare that RNIC is entitled to recover the fees and costs it incurred in defense of FSR in the Underlying Action;

H.      Award RNIC all costs it incurred to prosecute this action; and

I.      All such other relief as the Court deems just and proper under the circumstances.


Dated: September 18, 2025

                                        Respectfully submitted,

                                        */s/ Aaron Konstam*
                                        **AARON KONSTAM**
                                        Florida Bar No. 104765
                                        aaron.konstam@kennedyslaw.com
                                        **BRYAN WALSH**
                                        Florida Bar No. 1019565
                                        bryan.walsh@kennedyslaw.com

                                        **Kennedys Law LLP**
                                        1111 Brickell Avenue, Suite 1300
                                        Miami, Florida 33131
                                        T: 305.371.1111

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on September 18, 2025, this document was electronically filed via the

Court's CM/ECF system, which will send a notice of filing to:

<u>/s/ Aaron Konstam</u>
**AARON KONSTAM**
